YAMAHA MOTOR CORPORATION, U.S.A. *v.*
RICHARD'S HONDA YAMAHA;
North Little Rock Yamaha; and
Arkansas Motor Vehicle Commission

00-846

38 S.W.3d 356

Supreme Court of Arkansas
Opinion delivered March 1, 2001

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Marshall S. Ney* and *Leigh Anne Yeargan*, for appellant.

*Wilson, Engstrom, Corum & Coulter*, by: *Gary D. Corum*, for appellees Richard's Honda Yamaha and North Little Rock Honda Yamaha.

*Mark Pryor*, Att'y Gen., by: *Arnold M. Jochums*, Ass't Att'y Gen., for appellee Arkansas Motor Vehicle Commission.

R AY THORNTON, Justice. The dispositive issue presented by this case is one of statutory interpretation. Specifically, this case requires us to interpret Ark. Code Ann. § 23-112-311 (a) and (b) (Supp. 1997). The factual circumstances are as follows. On February 19, 1998, appellant, Yamaha Motor Corporation, entered into an agreement with Bradford Marine to become a dealer of Yamaha motorcycles, Riva Motor Scooters, and motor-driven ATVs. Upon entering into the agreement, appellant notified the Arkansas Motor Vehicle Commission [the Commission] of its intentions. The Commission was created by Act 388 of 1975, and codified as Ark. Code Ann. § 23-112-101 *et. seq.* (Repl. 1999). The act created the Commission and granted it authority to regulate and license persons doing business in Arkansas, including manufacturers, distributors, new motor vehicle dealers, salesman, and others engaged in trading or selling motor vehicles. Among the stated purposes of the act are the prevention of fraud, unfair practices, and monopolies, fostering vigorous and healthy competition, and promoting the public safety and welfare. *See* Ark. Code Ann. § 23-112-102 (Repl. 1999).

The Commission interpreted Ark. Code Ann. § 23-112-311 (a), as remaining applicable to motor driven all-terrain vehicles,

notwithstanding the provisions of Act 1154 of 1997. We disagree with that statutory interpretation and reverse.

The Commission notified appellees, Richard's Honda Yamaha and North Little Rock Honda Yamaha, of appellant's intent to establish an additional dealer point in Sherwood and invited protests. Subsection (a) requires notice to be given to the Commission and other new motor vehicle dealers in the relevant market area by a manufacturer seeking to enter into a franchise with a new motor vehicle dealer in that area. Subsection (a) also prescribes an opportunity for other dealers to protest, and authorizes the Commission to hold a hearing and determine whether the new motor vehicle dealer should be established.

Perhaps reflecting a concern whether Act 1154 of 1997 had exempted ATVs from the licensure provisions of Ark. Code Ann. § 23-112-311, the Commission adopted Regulation 3-4 on March 11, 1998. This regulation required a hearing on every new dealer license application when other dealers are present within the relevant market area to determine whether good cause exists to grant such license regardless of whether a protest had been filed by existing dealers. The regulation also shifted the burden of proof from the dealers objecting to the new dealer to the party applying for a new license. Regulation 3-4 was patterned after Ark. Code Ann. § 23-112-311 before its 1997 amendment but added an additional factor for the Commission to consider when determining whether a new license should be issued. The regulation became effective immediately.

On March 13, 1998, appellees filed a protest with the Commission of the prospective establishment of Bradford Marine as a Yamaha ATV dealer, pursuant to Ark. Code Ann. § 23-112-311. On April 8, 1998, appellant filed a motion to dismiss appellees's protest. Appellant contended that because the statute had been amended in 1997, the notice, protest, and hearing provisions of Ark. Code Ann. § 23-112-311 did not apply to the establishment of motorcycle or ATV dealers. Specifically, appellant argued that subsection (b)(3) of Ark. Code Ann. § 23-112-311, as amended by Act 1154 of 1997 exempted ATV dealers from the notice, protest, and hearing provisions. In the 1997 session of the General Assembly, subsection (b), providing exclusions from the authority of subsection(a), was amended to read as follows:

(b) This section does not apply:

(1) To the relocation of an existing dealer within that dealer's relevant market area, provided that the relocation not be at a site within seven (7) miles of a licensed new motor vehicle dealer for the same line make of motor vehicles;

(2) If the proposed new motor vehicle dealer is to be established at or within two (2) miles of a location at which a former licensed new motor vehicle dealer for the same line make of new motor vehicle has ceased operating within the previous two (2) years; or

(3) *To new motor vehicle dealers of motorcycle, motorized cycles and motor driven all-terrain vehicles.*

*Id.* (Emphasis added.) The emphasized language was added by Act 1154 of 1997.

The Commission then informed appellant that it would consider its motion to dismiss in conjunction with appellees's protest pursuant to Ark. Code Ann. § 23-112-311, and the Commission's new requirements pursuant to Regulation 3-4. On June 17, 1998, appellant Yamaha requested the recusal of some of the members of the Commission from participating in the protest hearing because they were named defendants in a federal lawsuit with appellant. All of the Commissioners recused from the matter, and the Governor appointed a special Commission to oversee the protest hearing.

On July 8 and 9, 1998, a hearing was held. Appellant Yamaha moved for reconsideration of its motion to dismiss. Once again, appellant argued that the Commission lacked jurisdiction to hear protests by motorcycle or ATV dealers after the 1997 amendment to Ark. Code Ann. § 23-112-311. The Commission denied appellant's motion to dismiss. The Commission found that the legislature could not have intended to exclude new motor vehicles or ATVs from the provisions of subsection (a) and determined that the language contained in Act 1154 was a clerical error or legislative mistake that should be corrected by the Commission and the courts to reflect the intention of the Commission to continue to require notice, protest opportunities, hearings, and approval by the Commission before a new dealer of motor driven ATVs could be licensed.

Appellant also moved to dismiss the Regulation 3-4 hearing, contending that Regulation 3-4 was void as a matter of law. The Commission deferred ruling on appellant's motion to dismiss until

the conclusion of the hearing. At the conclusion of the hearing, the Commission declined to rule on appellant's motion to dismiss, but voted that it would not rely on Regulation 3-4 in its determination of whether to grant the new license.

After the presentation of the evidence, the Commission determined that there was good cause to deny the appointment of Bradford Marine as an additional ATV dealer for Yamaha, based upon its interpretation of Ark. Code Ann. § 23-112-311. The Commission then noted that if it had considered the application pursuant to Regulation 3-4, it would have reached the same result.

Appellant appealed the Commission's decision to the Pulaski County Circuit Court contending that: (1) after the 1997 amendment to Ark. Code Ann. § 23-12-311, the Commission was without jurisdiction to consider appellees's protests; (2) the Commission's actions were arbitrary and capricious; (3) the Commission's decision was based on prejudicial evidence improperly admitted; and (4) the Commission's decision was not supported by substantial evidence. Appellant Yamaha also requested a declaratory judgment that Regulation 3-4 was void as a matter of law. In its January 13, 2000, order, the circuit court affirmed the Commission and found that Regulation 3-4 was not void as a matter of law. This appeal then ensued.

■■ The standard of review in this area of the law is well-developed. The appellate court's review is directed not toward the circuit court, but toward the decision of the agency. That is so because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *McQuay v. Arkansas State Board of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999). Our review of administrative decisions is limited in scope. Such decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *McQuay, supra.*

In its threshold point on appeal, appellant argues that the Commission did not have jurisdiction to consider appellees's protest. Appellant Yamaha challenges the Commission's jurisdiction because Ark. Code Ann. § 23-112-311 as amended in 1997 excluded "new motor vehicle dealers of motorcycles, motorized cycles, and motor driven all-terrain vehicles." *Id.*

It is with this factual background that appellant argues that because ATV dealers were exempted from the notice, protest, and hearing section of Ark. Code Ann. § 23-112-311, the Commission lacked authority to hold a hearing to determine whether there was good cause to deny the addition of Bradford Marine as a new Yamaha dealer. To determine whether the Commission had jurisdiction over appellees's protest, it is necessary for us to look at the language of Ark. Code. Ann. § 23-112-311. The statute provides in pertinent part:

(a)(1) In all instances, in the event that a manufacturer or distributor seeks to enter into a franchise establishing an additional new motor vehicle dealer or relocating an existing new motor vehicle dealer within or into a relevant market area where the same line make is then represented, the manufacturer or distributor shall in writing first notify the Motor Vehicle Commission and each new motor vehicle dealer in that line make in the relevant market area of the intention to establish an additional dealer or to relocate an existing dealer within or into that market area.

(2) Within twenty (20) days of receiving the notice, or within twenty (20) days after the end of any appeal procedure provided by the manufacturer or distributor, any new motor vehicle dealer may file with the Motor Vehicle Commission to protest the establishing or relocating of the new motor vehicle dealer. When a protest is filed, the Motor Vehicle Commission shall inform the manufacturer or distributor that a timely protest has been filed, and that the manufacturer or distributor shall not establish or relocate the proposed new motor vehicle dealer until the Motor Vehicle Commission has held a hearing, nor thereafter if the Motor Vehicle Commission has determined that there is good cause for not permitting the addition or relocation of the new motor vehicle dealer.

(b) This section does not apply:

* * *

(3) To new motor vehicle dealers of motorcycle, motorized cycles and motor driven all-terrain vehicles.

Ark. Code Ann. § 23-112-311.

We have stated that the issue whether the statute divests the Commission of jurisdiction over the matters involved in this

case is an issue of statutory interpretation. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Dunklin v. Ramsay*, 328 Ark. 263, 944 S.W.2d 76 (1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997). In other words, if the language of the statute is plain and unambiguous, the analysis need go no further. *Id.* A statute is ambiguous where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997). When a statute is clear, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *State v. McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994). We are also very hesitant to interpret a legislative act in a manner contrary to its express language unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

It is also a rule of statutory construction that the manner in which a law has been interpreted by executive and administrative officers is to be given consideration and will not be disregarded unless it is clearly wrong. *Omega Tube & Conduit Corp. v. Maples*, 312 Ark. 489, 850 S.W.2d 317 (1993). An administrative interpretation is to be regarded as highly persuasive. *Id.* However, although an agency's interpretation is highly persuasive, where the statute is not ambiguous, we will not interpret it to mean anything other than what it says. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999).

Informed by our rules of statutory construction, we turn to the case now on review. The statutory provision that is in dispute provides: "this section [the notice, protest, and hearing provision of Ark. Code Ann. § 23-112-311 (a)] does not apply... to new motor vehicle dealers of motorcycle, motorized cycles and motor driven all-terrain vehicles." Ark. Code Ann. § 23-112-311(b)(3). This provision is not ambiguous. The language is not open to two or more constructions, nor is it of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. Because the language is not ambiguous, we then look to its plain meaning to determine the legislative intent. Looking to the plain meaning of the language in the statute, we conclude that the legislature intended to exclude dealers of motorcycles and ATVs from the notice, protest, and hearing requirement of Ark. Code Ann. § 23-112-311 (a).

Appellees urge that the statute is ambiguous and that we are not bound by the plain meaning of the statute, but that we should consider the statute as a whole. Appellees contend that if we look to the statute as a whole, it contains language that would render the exclusion of motorcycle and ATV dealers from the notice, protest, and hearing provision of Ark. Code Ann. § 23-112-311 nonsensical. We disagree.

Appellees also argue that because Act 1042 of 1999 amended section (b)(3) of Ark. Code Ann. § 23-112-311, then we should assume that the language in the statute under consideration in this case that excludes the manufacturers of motorcycle and ATV dealers from the notice, protest, and hearing provision of Ark. Code Ann. § 23-112-311 was simply a scrivener's error or drafting error or omission. Once again appellees's argument is misplaced. We have been hesitant to consider subsequent legislation in our interpretation of previous statutes. *See Ford, supra.* (holding that when the express language of a statute is clear, later statutory changes should only be considered if it is obvious that there has been a drafting error or omission). In *Ford,* we noted that "merely because Act 117 of 1999 changes the language in the statute...does not necessarily mean that an error occurred in the drafting of the 1997 statute." *Id.* We apply the same rationale to the case now before us. We cannot conclude that merely because Act 1042 of 1999 changed the language of section (b) of Ark. Code Ann. § 23-112-311, that that change necessarily means that an error occurred in the drafting of the 1997 statute.

Additionally, we note that Act 1042 of 1999 made substantial changes to Ark. Code Ann. § 23-112-311 (b), which appear to exceed any effort to correct a scrivener's error or drafting omission. Specifically, Act 1042 of 1999, as marked for amendment, appeared as follows:

> (1) To the relocation of an existing dealer, other than a dealer of motorcycles, motorized cycles, and all-terrain vehicles, within that dealer's relevant market area, provided the relocation not be at a site within seven (7) ten (10) miles of a licensed new motor vehicle dealer for the same line make of motor vehicles; or

> (2) If the proposed new motor vehicle dealer, other than a dealer of motorcycles, motorized cycles, and all-terrain vehicles, is to be established at or within two (2) miles of a location at which a former licensed new motor vehicle dealer for the same line make

of new motor vehicle has ceased operating within the previous two (2) years; or

(3) ~~To new motor vehicle dealers of motorcycles, motorized cycles, and motor-driven all-terrain vehicles~~ <u>To the relocation of an existing dealer of motorcycles, motorized cycles, and all-terrain vehicles, within that dealer's relevant market area, provided the relocation not be at a site within twenty-five (25) miles of a licensed new motor vehicle dealer for the same line make of motor vehicles.</u>

*Id.* It is apparent that the 1999 amendment was not designed to correct a scrivener's error, but accomplished significant changes as reflected by the language added by the amendment. Accordingly, we reject appellees' statutory construction arguments and conclude that we should rely upon the plain meaning of the statute.

While our interpretation of the statute requires that the Commission be reversed, we also consider two issues that may arise again in future litigation. We first consider whether allowing Patricia Stroud, the Executive Director of the Motor Vehicle Commission, to testify as to the intent and purpose of Act 1154 of 1997 was proper.

 We have held that when a statute is plain and unambiguous, extrinsic facts should not be permitted to alter the meaning of the language used in the statute. *See Yarbrough v. Witty*, 336 Ark. 479, 987 S.W.2d 257 (1999). Simply stated, where the meaning of an act is clear and unambiguous, this court is primarily concerned with what the document says, rather than what its drafters may have intended. *Id.* We have also held that the testimony of the legislators with respect to their intent in introducing legislation is clearly inadmissible. *Board of Trustees v. City of Little Rock*, 295 Ark. 585, 750 S.W.2d 950 (1988). We have also noted that little weight should be attached to expressions of individual members of the legislature. *See State v. Lancashire Fire Ins. Co.*, 66 Ark. 466, 51 S.W. 633 (1899).

At the hearing, Ms. Stroud testified as to her opinion of the Commission's intent in proposing Act 1154 of 1997. She stated that the act, as it was drafted by the Commission, would have only excluded "the relocation of" new motor vehicle dealers of motorcycles, motorized cycles, and motor-driven all-terrain vehicles. Ms. Stroud also stated that "all nine commissioners were in on the drafting" of Act 1154. Finally, she testified that Act 1154, as

adopted by the legislature, made "no sense whatsoever" and that the language was the result of a "clerical error in which key words were left out."

 It was error to allow Ms. Stroud to testify. The Commission should have determined whether it had jurisdiction over the protest hearing without resorting to extrinsic evidence. Ms. Stroud was not qualified to testify as to the intent of the legislature in adopting the act. We hold that allowing Ms. Stroud to testify as to the Commission's intent in proposing Act 1154, and the legislature's actions in adopting Act 1154 was erroneous.

Next, we consider whether Regulation 3-4 is void as a matter of law. During the pendency of this case, the Commission enacted Regulation 3-4. Appellant Yamaha argues that Regulation 3-4 is contrary to Ark. Code Ann. § 23-112-311. Specifically, appellant contends that the regulation is invalid because: (1) it gives the Commission authority to hold a hearing on every new dealer application regardless of whether a protest has been filed; (2) it shifts the burden from the protesting party to establish why good cause exists to deny the application, to the applicant to show why good cause exists to grant the license; and (3) it articulates an additional factor for the Commission to consider in determining whether to grant a new dealer license. Regulation 3-4 states:

> (4) Except as to buy/sell agreements an additional new motor vehicle dealer whose location will be within the relevant market area as defined by A.C.A § 23-112-103 of an existing dealer will be licensed by the Commission only after the Commission determines whether there is good cause to permit the additional license. In determining whether good cause exists to issue the license the Commission shall take into consideration the existing circumstances including but not limited to:
>
> (A) Permanency of the investment of both the existing and proposed new motor vehicle dealer(s):
>
> (B) Growth or decline in population and new motor vehicle purchases in the relevant market area:
>
> (C) Effect of the consuming public to the relevant market area:
>
> (D) Whether it is injurious or beneficial to the public welfare for an additional new motor vehicle dealer to be established:

(E) Whether the new motor vehicle dealers of the same line make in that relevant market area are providing adequate competition and convenient customer care for the motor vehicles of the line make in the market area which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of motor vehicles parts and qualified service personnel:

(F) Whether the establishment of an additional new motor vehicle dealer would increase competition and therefore be in the public interest:

(G) Whether the manufacturer or distributor in question possesses the ability to adequately supply the existing new motor vehicle dealers of the same line make in the relevant market area if any, with new motor vehicles parts and accessories:

This determination shall be made after a hearing held in accordance with Rule II.

Arkansas Motor Vehicle Commission Regulation 3-4.

We have held that an administrative regulation cannot be contrary to a statute. *Pledger v. C.B. Form Co.*, 316 Ark. 22, 871 S.W.2d 333 (1994). In this case, Regulation 3-4 is contrary to Ark. Code Ann.§ 23-112-311 (a) and (b) in several ways. First, Regulation 3-4 gives the Commission the authority to hold a hearing on every new dealer application. This provision should be contrasted with Ark. Code Ann. § 23-112-311 which permits hearings on *some applications* [not applications for new motor vehicle dealers of motorcycles or ATVs] for new dealerships *only when a protest has been filed* with the Commission. *Id.* (emphasis added). Additionally, Regulation 3-4 places the burden of proving good cause to grant a license on the party applying for the license. This provision is also contrary to Ark. Code Ann. § 23-112-311, which places the burden of establishing good cause to deny the application on the protesting party. *Id.* Accordingly, we hold that Regulation 3-4 is invalid as a matter of law.

We conclude that the Commission lacked jurisdiction to consider appellees' challenges to appellant's request to establish Bradford Marine as a new dealer of Yamaha products pursuant to Ark. Code Ann. § 23-112-311 and reverse the Commission's actions in allowing protests, conducting a hearing, and denying a new license which were not authorized by statute. We also hold that the Commission's effort to bootstrap the missing authority by

adoption of Regulation 3-4 was invalid. Accordingly, we reverse and remand, instructing the trial court to remand the matter to the Commission for entry of an order granting Yamaha's request for a new dealership license. *See* Ark. Code Ann. § 25-15-212 (h)(2) (Supp. 1999). As a result, it becomes unnecessary to address appellant's remaining points on appeal. *See Culpepper v. Arkansas State Bd. of Chiropractic Examiners*, 343 Ark. 467, 36 S.W.3d 335 (2001).

Reversed and remanded.