The Honorable LeRoy Dangeau State Representative and Co-Chair The Honorable John Paul Capps State Senator and Co-Chair Subcommittee on Administrative Rules Regulations State Capitol, Room 423 Little Rock, AR 72201
Dear Representative Dangeau and Senator Capps:
I am writing in response to your request for my opinion on a proposed amendment to Regulation 14 of the Department of Environmental Quality, Solid Waste Division, Waste Tire Program. You relay the following facts and set out the following question:
 An amendment being promulgated to Reg. 14.704 reads as follows:" Tires shall not be deposited in a landfill as a method of ultimate disposal unless shredded or split into sufficiently small parts to assure their proper disposal. For purposes of disposal, a sufficiently small parts means that the tire has been cut into four substantially equal pieces or into two pieces around the circumference of the tread. Whole baled tires may be disposed of in a waste tire monofill that has been prepared in such a manner that the tires can be recovered at a later date. Whole baled tires shall be deposited in a waste tire monofill in such a way that avoids or minimizes the collection of explosive gases and liquids as required by the Department."
 Further, the proposed Reg. 14.708 states that "In accordance with ACA § 8-9-403 et seq., only tires that have been processed by cutting or shredding or whole baled tires shall be permitted for placement in waste tire monofills."
 Since the Environmental Protection Agency does not have a requirement that tires be baled and they cannot be monofilled, does this exempt the Department of Environmental Quality from complying with Act 1264 of 1993 which requires an economic impact/environmental benefit analysis, commonly referred to as the cost benefit analysis?
(Emphasis added). The proposed amendment to Regulation 14 adds the underlined language. A "monofill" is a "permitted area in which a single waste material (waste tires) may be placed for disposal and/or temporary holding." Reg. 14 § 2.9.
RESPONSE
In my opinion, in the absence of federal requirements on the subject, the proposed amendment to Reg. 14.704 is not more stringent than the federal requirements under ADEQ Reg. 8, § 3.5.3, and therefore does not require a cost-benefit analysis under A.C.A. § 8-1-203(b)(1)(B) (Repl. 2000).
Act 1264 of 1993 was codified, in part, at A.C.A. § 8-1-203. In the pertinent part, it provides:
(b) The commission's powers and duties shall be as follows:
 (1) (A) Promulgation of rules and regulations implementing the substantive statutes charged to the Arkansas Department of Environmental Quality for administration.
 (B) In promulgation of such rules and regulations, prior to the submittal to public comment and review of any rule, regulation, or change to any rule or regulation that is more stringent than the federal requirements, the commission shall duly consider the economic impact and the environmental benefit of such rule or regulation on the people of the State of Arkansas, including those entities that will be subject to the regulation.
A.C.A. § 8-1-203 (b) (Repl. 2000) (emphasis added). The code further provides that the Arkansas Pollution Control and Ecology Commission shall initiate rule-making proceedings to implement the analysis; define the extent of the analysis required; and produce a written report available for public comment. A.C.A. § 8-1-203(b)(D)(E) (Repl. 2000). The Commission defines a regulation that is more stringent than federal requirements as:
 A regulation that is "more stringent than federal requirements" is a regulatory standard, effluent limit, procedure or other requirement which is more stringent than that which is expressly addressed by a federal regulation or presented as a minimum requirement for state program authorization.
Ark. Pollution Control Ecology Comm'n Regulation 8 § 3.5.3 (emphasis added).
The Arkansas Supreme Court has consistently held that the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. Cyphers v. United Parcel Service,68 Ark. App. 62, 3 S.W.3d 698 (1999). To determine whether the proposed changes to Reg. 14.704 and 14.798 require an economic impact-environmental benefit analysis, we must analyze the language of A.C.A. § 8-1-203, the applicable regulation, and any pertinent federal requirements.
Act 1264 of 1993, which added subsections (b)(1)(A) through (D) to A.C.A. § 8-1-203, expressly stated the legislative intent of requiring an economic impact-environmental benefit analysis as follows:
 The General Assembly desires to provide protection of the human health and the environment for the citizens of the State. In providing such protection, the General Assembly recognizes that environmental rules and regulations should have a sound scientific and economic basis.
Act 1264 of 1993, Section 1.
The applicable statute, A.C.A. § 8-1-203(b)(1)(B), mandates the economic impact-environmental benefit analysis for rules and regulations that are "more stringent" than federal requirements. The applicable regulation states that a regulation is more stringent only if it is more stringent than the standard expressly addressed by the federal requirements. Ark. Pollution Control Ecology Comm'n Regulation 8 § 3.5.3. You posit a lack of any pertinent regulations under the federal Environmental Protection Agency in your request for my opinion. I have failed to discover any in my research as well.[1] If there are no other sources of a federal requirement than EPA regulations, then we may quickly analyze this situation.
The language of the regulation states that to be more stringent than federal requirements, the regulation must be more stringent than what is expressly stated in federal regulations. The use of "expressly" given its plain an ordinary meaning leads me to conclude that absent a federal regulation already impacting the subject matter, that the proposed amendment to the Arkansas regulation is not "more stringent" as that concept is defined in the Commission's regulations. I cannot say that this interpretation is clearly wrong or clearly against the intent of the statute.
It might be argued, however, that the interpretation offered in Reg. 8 § 3.5.3 cuts against the legislative intent of A.C.A. § 8-1-203. The intent of Act 1264 of 1993 was to base environmental regulations on sound scientific and economic theories. Act 1264 of 1993, Section I. The wording of the statute does not specify that the federal requirements must be expressly set forth in a regulation. It could be argued that if there are no federal requirements covering this issue, then there is no federal restriction or control of the disposal of baled waste tires and waste tire monofills. The restriction and direction found in the proposed amendment to Reg. 14.704 could then be argued to be more rigorous than that which is not addressed by the federal regulations. Unless Regulation 8 § 3.5.3 is contrary to A.C.A. § 8-1-203, however, it is within the Commission's power to promulgate. An administrative regulation cannot be contrary to a statute. See e.g., Arkansas Dept. of Human Services v.Huff, 347 Ark. 553, 65 S.W.2d 880 (2002) and Yamaha Motor Corp. v.Richard's Honda Yamaha, 344 Ark. 44, 38 S.W.3d 356 (2001). Again, I cannot say that the regulation is clearly contrary to the statute. I will note, however, that the legislature retains authority to alter the statutory requirement if it sees fit.
Additionally, while I do not believe that an economic impact/environmental benefit analysis is required under A.C.A. §8-1-203, Executive Order No. 05-04 now requires that all proposed rules and regulations of administrative agencies that effect small businesses complete an economic impact analysis before promulgation. The Department may therefore wish to consult with its legal counsel to determine whether Executive Order 05-04 applies to the promulgation of this rule.
In my opinion, therefore, A.C.A. § 8-1-203(b) as implemented by ADEQ in Reg. 8 § 3.5.3, does not require ADEQ to complete an economic impact/environmental benefit analysis for the proposed amendment to Reg. 14.704, though under Executive Order No. 05-04 an economic impact analysis may be required.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] The Code of Federal Regulations places restrictions on the use of waste tires in small power production facilities. See, e.g.40 C.F.R. § 60.32b and § 60.50a. Furthermore, the implementation of solid waste management plans including waste tires is regulated at40 C.F.R. § 256.31.