Cite as 2024 Ark. 25

# SUPREME COURT OF ARKANSAS
No. CV–23–412

| | |
|---|---|
| | **Opinion Delivered:** March 7, 2024 |
| STATE OF ARKANSAS,<br>DEPARTMENT OF FINANCE AND<br>ADMINISTRATION<br><div align="right">APPELLANT</div> | APPEAL FROM THE PHILLIPS<br>COUNTY CIRCUIT COURT<br>[NO. 54CV–17–310] |
| V. | |
| KIT WILSON AND JOLE WILSON<br><div align="right">APPELLEES</div> | HONORABLE DANNY W. GLOVER,<br>JUDGE |
| | REVERSED AND REMANDED. |

**KAREN R. BAKER, Associate Justice**

Appellant Arkansas Department of Finance and Administration (ADFA) appeals the

Phillips County Circuit Court's order ordering ADFA to reduce appellees Kit Wilson and

Jole Wilson's 2015 Arkansas income tax obligation to $0. ADFA presents two arguments

on appeal: (1) the circuit court erred in determining that ADFA must apply the Wilsons'

historic-rehabilitation income-tax credit to the amount of income tax that must be paid to

the State of Arkansas after apportioning the Wilsons' tax due; and (2) the circuit court erred

in determining that Arkansas Code Annotated section 26–51–435 conflicts with section 26–

51–202; the Arkansas Historic Rehabilitation Income Tax Credit Act of 2009 (Tax Credit

Act), codified at sections 26–51–2201 et seq. (Repl. 2020 & Supp. 2021); or is otherwise

invalid or inapplicable. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–

2(a)(8) (this court required by law to hear appeal) and Arkansas Code Annotated section 26–

18–406(c)(2). We reverse and remand.

The Wilsons restored Lewis Supply Building in Helena. Upon the completion of the project, the Department of Arkansas Heritage issued a state income tax credit in the amount of $125,000 to Lewis Supply Building, LP. During the 2015 tax year, the Wilsons were residents of Alaska. In 2016, the Wilsons filed their 2015 nonresident Arkansas income tax return indicating an Arkansas income tax liability of $8,430. Because the tax due was not paid with the return, on May 16, 2016, ADFA provided the Wilsons a notice of proposed assessment in the amount of $8,578.96. In June 2016, Lewis Supply Building, LP, transferred $10,000 of its Arkansas Historic Rehabilitation Income Tax Credits to Kit Wilson. On August 15, 2016, ADFA provided notice to the Wilsons that it has adjusted their income tax return for 2015. Pursuant to the explanation of tax adjustment, the $10,000 historic rehabilitation tax credit was applied to the 2015 tax return. ADFA applied the credit to the 2015 Arkansas income tax return prior to apportionment, which adjusted the Wilsons' Arkansas income tax liability to $5,967. The Wilsons protested ADFA's adjustment, claiming that their original income tax liability of $8,430 should have been reduced to zero after application of the $10,000 credit to their Arkansas return. An administrative law judge issued a decision against the Wilsons, which was sustained by the Deputy Director and Commissioner of Revenue.

On January 19, 2018, the Wilsons filed their first amended petition for judicial review in the Phillips County Circuit Court. The Wilsons took issue with the methodology used in Ark. Code Ann. § 26-51-435 (Repl. 2020) to calculate the Arkansas tax liability for a nonresident taxpayer. The Wilsons argued that the methodology is flawed in that tax credits are applied against the tax liability based on all income sources before apportionment of the

2

Arkansas income percentage to produce the actual tax liability for Arkansas. The Wilsons set forth the following calculations:

> [The Wilsons'] total income was $525,000, 25% of which was derived from Arkansas, the balance, 75%, of which was derived outside of Arkansas.
>
> A total income of $525,000 produces a calculated tax liability of $34,000 before proration.
>
> Arkansas income of $131,250 (25% of total income derived both within and without Arkansas) produces a tax liability of $8,430.
>
> Therefore, [the Wilsons] are being told to "apply/use" $34,000 of the Tax Credits to "pay" an $8,430 Arkansas tax liability.

The Wilsons identified the following issues on appeal to the circuit court: Ark. Code Ann. § 26-51-435 is in direct conflict with the Arkansas Historic Tax Credit Act of 2009 and other Arkansas statutes, in particular, but not limited to, Ark. Code Ann. § 26-51-202(c) (Repl. 2020) and 26-51-2205(g)(1) (Repl. 2020). The Wilsons argued that judicial review of the record should result in an order reversing or modifying ADFA's decision.

On February 2, 2018, ADFA filed its motion to dismiss the first amended complaint. ADFA asserted that the Wilsons failed to plead sufficient facts upon which relief may be granted and the lawsuit should be dismissed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure. ADFA argued that the statutory provisions identified by the Wilsons complement each other or perform different functions and do not conflict.

On February 23, 2018, the Wilsons filed their reply to ADFA's motion to dismiss the first amended petition. Attached to the motion to dismiss was the affidavit of Kit Wilson.

On August 3, 2018, ADFA filed its answer to the amended petition. On August 7, 2019, ADFA filed its motion for summary judgment. ADFA argued that it correctly applied the tax credit to the Wilsons' returns as required by Ark. Code Ann. § 26-51-435, which

3

sets forth the procedure for completing a nonresident income tax return. Additionally, ADFA argued that no conflict exists between Ark. Code Ann. § 26-51-435 and § 26-51-202 or the Tax Credit Act of 2009, codified at Ark. Code Ann. §§ 26-51-2201 et seq. To support its position that it correctly applied the tax credit prior to apportionment, ADFA attached an affidavit of ADFA Auditor Jesse Williams. Williams explained that a tax-apportioning procedure must be performed on Arkansas nonresident income tax returns as required by Arkansas law. The apportioning ensures that nonresidents are taxed only on the portion of their income that was earned in Arkansas. Arkansas Code Annotated section 26-51-435 provides the step-by-step procedures for computing and properly apportioning a nonresident's income tax liability. As required by Ark. Code Ann. § 26-51-435(c), the entire $10,000 income tax credit was deducted from the Wilsons' total tax liability. ADFA then proceeded to reapportion the Wilsons' total tax liability pursuant to § 26-51-435(d) and (e). According to Williams, the Wilsons' apportioned Arkansas income tax liability was reduced from $8,430 to $5,967 after the $10,000 credit was applied to their return. As to the Wilsons' claim that the manner in which the income tax credits are applied on their income tax return deprives them of the full benefit of the credit, Williams stated that regardless of whether a taxpayer is a resident or nonresident of Arkansas, the total tax is calculated on income from all sources on both the resident and nonresident Arkansas income tax returns. Income tax credits are subtracted from the total tax on both tax returns, which yields the net tax due. Williams explained that the key difference between the resident and nonresident tax returns is that nonresidents then proceed to apportion their net tax liability by using a percentage based on their Arkansas sourced income to their total income from all sources.

4

On September 9, 2019, the Wilsons filed their opposition to ADFA's motion for summary judgment and request for attorney's fees. The Wilsons again argued that Ark. Code Ann. § 26-51-435 is in direct conflict with the Tax Credit Act and Ark. Code Ann. § 26-51-202(c). The Wilsons contended that ADFA's flawed application of the tax credit prevented them from using the full value of their tax credits against their Arkansas liability. The Wilsons argued that summary judgment was not a proper remedy because there are issues of material fact that are in dispute. The Wilsons contended that the application of the tax credit is a factual issue in dispute because the parties dispute the procedure.

On September 16, 2019, ADFA filed its reply to the Wilsons' opposition to motion for summary judgment and request for attorney's fees. ADFA asserted that the Wilsons mischaracterize legal questions of statutory construction as issues of fact. ADFA contended that the only remaining issues are the allegations that the application of the tax credit was improper and the applicable statutes conflict, both of which are questions of law.

On January 10, 2022, a hearing was held on the motions. After posttrial briefing, on February 22, the circuit court issued its letter opinion finding in favor of the Wilsons. The court found that the Wilsons should be entitled to receive the full credit afforded to them under the tax credit. On March 1, ADFA filed its motion for findings of fact and conclusions of law.

On September 21, 2022, the circuit court entered the following findings of fact: The Wilsons filed an Arkansas tax return that showed a total income of $524,622 with an Arkansas income of $129,212. On this basis, the Wilsons' Arkansas income constituted 24.6295 percent of their total income. Applying the formulas contained in the relevant statutes, the "Tax Amount" (before allocating for non-Arkansas income) was $34,278. This

5

amount was then pro-rated based on the proportion of in-state and out-of-state income, with the "Tax Due" and "Total Due" being $8,430 (24.6295 percent of $34,278). The circuit court found that after the Wilsons submitted the tax credit as payment toward the taxes, ADFA did not apply the $10,000 tax credit to the "Tax Due" or "Total Due." Instead, ADFA applied the tax credit toward the "Tax Amount." ADFA then took this new "Tax Amount" of $24,278 ($34,278 minus $10,000) and then applied the 24.6295 percent formula to that number. This resulted in a "Tax Due" of $5,967 and a total credit of only $2,463 (rather than $10,000). The circuit court found that ADFA's calculation diluted the value of the Wilsons' tax credit by over 75 percent. The circuit court concluded that Ark. Code Ann. § 26-51-2205(g)(1) and (g)(3) conflict with Ark. Code Ann. § 26-51-435. It then ordered ADFA to apply the Wilsons' tax credit to their 2015 Arkansas income tax return "to reduce the [Wilsons'] tax obligation for 2015 to $0, and to allow the [Wilsons] to carry forward the unused portion of the tax credit for a period of five consecutive tax years." The circuit court denied the Wilsons' request for attorney's fees and adopted and incorporated by reference its February 22, 2022 letter opinion. Except for the arguments related to the attorney's fees, the arguments set forth in the Wilsons' opposition to ADFA's motion for summary judgment, request for attorney's fee, with incorporated brief in support and the Wilsons' post-trial brief were adopted and incorporated by reference.

On September 30, 2022, ADFA filed its motion for reconsideration, which was deemed denied. ADFA appeals.

*Standard of Review*

We have "acknowledged confusion in prior cases regarding the standard of review for agency interpretations of statutes and clarified the level of deference due: agency

6

interpretations of statutes will be reviewed de novo." *Am. Honda Motor Co., Inc. v. Walther*, 2020 Ark. 349, at 5, 610 S.W.3d 633, 636 (citing *Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, 597 S.W.3d 613). Quoting from *Myers*, we explained:

> [I]t is the province and duty of this Court to determine what a statute means. In considering the meaning and effect of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. An unambiguous statute will be interpreted based solely on the clear meaning of the text. But where ambiguity exists, the agency's interpretation will be one of our many tools used to provide guidance.

*Id.* at 5–6, 597 S.W.3d at 617 (internal citations omitted).

The basic rule of statutory construction is to give effect to the intent of the legislature by giving words their usual and ordinary meaning. *Ark. Soil & Water Conservation Comm'n v. City of Bentonville*, 351 Ark. 289, 92 S.W.3d 47 (2002). When a statute is clear, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001). In other words, if the language of the statute is plain and unambiguous, the analysis need go no further. *Id.* This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.* Further, we must give effect to the specific statute over the general. *Searcy Farm Supply, LLC v. Merchants & Planters Bank*, 369 Ark. 487, 256 S.W.3d 496 (2007). "This court has long held that a general statute must yield to a specific statute involving a particular subject matter." *Comcast of Little Rock, Inc. v. Bradshaw*, 2011 Ark. 431, at 9, 385 S.W.3d 137, 142–43. Statutes relating to the same subject should be read in a harmonious manner, if possible. *Thomas v. State*, 349 Ark. 447, 79 S.W.3d 347 (2002). In construing any statute, we place it

7

beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Standridge v. State*, 2014 Ark. 515, 452 S.W.3d 103. Finally, we seek to reconcile statutory provisions to make them consistent, harmonious, and sensible. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179.

Regarding the tax credits, when a taxpayer claims to be entitled to a tax exemption, deduction, or credit under the terms of a state tax law, then the statute providing the tax exemption, deduction, or credit shall be strictly construed in limitation of the exemption, deduction, or credit. Ark. Code Ann. § 26-18-313(b).

I. *Application of the Tax Credit*

For its first point on appeal, ADFA argues that the circuit court erred in determining that ADFA must apply the Wilsons' historic-rehabilitation income-tax credit to the amount of income tax that must be paid to the State of Arkansas after apportioning the Wilsons' tax due.

Arkansas Code Annotated section 26-51-435 provides step-by-step instructions for determining the amount of income tax a nonresident must pay to the State of Arkansas:

(a) Nonresidents or part-year residents of Arkansas shall compute their taxable income as if all income were earned in Arkansas.

(b) Using Arkansas income tax rates, nonresident or part-year residents of Arkansas shall compute their tax liability on the amount computed in subsection (a) of this section.

(c) From the tax liability computed in subsection (b) of this section there shall be deducted all allowable credits to determine the amount of tax due.

(d)(1) Nonresidents shall divide adjusted gross income from Arkansas sources by the adjusted gross income from all sources to arrive at the applicable percentage that Arkansas adjusted gross income represents of all adjusted gross income received by the taxpayer in the income year.

(2) Part-year residents shall divide adjusted gross income received while an Arkansas resident by the adjusted gross income from all sources to arrive at the applicable percentage that the adjusted gross income received while an Arkansas resident represents of all adjusted gross income received by the taxpayer in the income year.

(e) Nonresidents and part-year residents shall multiply the amount computed in subsection (c) of this section by the applicable percentage from subsection (d) of this section in order to determine the amount of income tax which must be paid to the State of Arkansas.

Ark. Code Ann. § 26–51–435 (a)–(e).

Having reviewed subsection (c), we conclude that ADFA was required to deduct "all allowable credits" from the Wilsons' tax liability calculated pursuant to subsections (a) and (b). This results in the "tax due." Thus, pursuant to the plain language of section 26-51-435, we hold that ADFA correctly applied the tax credit to all income, including income earned outside of Arkansas. The statutory step-by-step procedure for determining the amount of income tax a nonresident must pay to the State of Arkansas set forth in section 26-51-435 repeatedly uses the word "shall." We have interpreted the word "shall" to mean that the legislature intended mandatory compliance with the statute unless such an interpretation would lead to an absurd result. *City of N. Little Rock v. Pfeifer*, 2017 Ark. 113, 515 S.W.3d 593 (citing *Loyd v. Knight*, 288 Ark. 474, 706 S.W.2d 393 (1986)). ADFA followed the mandatory language contained in the statute. Accordingly, we hold that the circuit court erred in its statutory interpretation, and we reverse and remand on this issue.

II. *Ark. Code Ann. § 26-51-435*

Next, we turn ADFA's argument that the circuit court erred in determining that Ark. Code Ann. § 26-51-435 conflicts with § 26-51-202; the Arkansas Historic Tax Credit

9

Act of 2009, codified at Ark. Code Ann. § 26-51-2201 et seq.; or is otherwise invalid or inapplicable.

## A. Ark. Code Ann. § 26-51-202

ADFA argues that no conflict exists between Ark. Code Ann. § 26-51-435 and Ark. Code Ann. § 26-51-202. We first turn to the relevant portions of Ark. Code Ann. § 26-51-202 in effect at the time of the tax period at issue:

(a) A tax is imposed and shall be assessed, levied, collected, and paid annually at the rates specified in § 26-51-201 upon and with respect to the entire net income as defined in this chapter, except as provided in this section, from all property owned and from every business, trade, or occupation carried on in this state by individuals, corporations, partnerships, trusts, or estates not residents of the State of Arkansas.

(b)(1) Each nonresident as defined in § 26-51-102 shall file income tax returns with the State of Arkansas and pay the tax without distinction, or incident to the laws of the nonresident's resident state.

(2) It is the specific intention of the General Assembly that the tax shall be collected from property owned and from the conduct of every business, trade, or occupation, whether or not the individuals, corporations, partnerships, trusts, or estates are qualified to do business in the State of Arkansas and whether or not such business, trade, or occupation shall be conducted in interstate commerce.

(c) However, the payment of the tax shall be based upon net income properly allocated as net income arising from the ownership of property and the conduct of a business, trade, or occupation in the State of Arkansas.

Ark. Code Ann. § 26-51-202(a)–(c).

It was the Wilsons' position below, which was incorporated by the circuit court, that Ark. Code Ann. § 26-51-202 conflicts with Ark. Code Ann. § 26-51-435. Specifically, the Wilsons argued that the public-policy implications resulting from the misapplication of subsection (c) cannot be ignored. Further, they argued that if ADFA is allowed to consider use of all income generated outside of Arkansas in calculating income for taxation, out of

10

state individuals would surely think twice before investing in Arkansas communities. Finally, they assert that this would have a chilling effect on economic development.

Regarding the statutes issue, ADFA argues that Ark. Code Ann. § 26-51-202 sets forth general tax concepts applicable to nonresidents; however, it does not provide detailed instructions for implementing those concepts. Instead, as set forth above, Ark. Code Ann. § 26-51-435 provides detailed step-by-step instructions for taxing nonresidents. As ADFA correctly points out, Ark. Code Ann. § 26-51-435 implements the requirement of Ark. Code Ann. § 26-51-202(c) by setting forth the step-by-step procedure used to apportion a nonresident's Arkansas income tax liability. This procedure ensures that only Arkansas income is taxed. As to any public-policy concerns, The General Assembly establishes public policy—not this court. *Brewer v. Poole*, 362 Ark. 1, 16, 207 S.W.3d 458, 467 (2005) (citing *Davis v. Ross Prod. Co.*, 322 Ark. 532, 910 S.W.2d 209 (1995)).

Accordingly, we hold that Ark. Code Ann. § 26-51-435 and Ark. Code Ann. § 26-51-202 do not conflict with each other.

### B. Ark. Code Ann. §§ 26-51-2201 et seq.

Finally, we turn to whether Ark. Code Ann. § 26-51-435 conflicts with the Tax Credit Act of 2009, codified at Ark. Code Ann. §§ 26-51-2201 et seq.[1]

---

[1] In their posttrial brief, which was adopted by the circuit court, the Wilsons argued that Ark. Code Ann. § 26-51-435 conflicts with Ark. Code Ann. §§ 26-51-513(b) and 26-51-2205(b). ADFA argues that both of these statutes require that the credit be applied to the "tax due." However, section 26-51-513(b) provides that "[t]he amount of the income tax credit under this section that may be claimed by the taxpayer in a tax year shall not exceed the amount of state income tax due by the taxpayer." Section 26-51-2205(b) provides that "[t]he amount of the Arkansas historic rehabilitation income tax credit that may be used by a holder for a taxable year may equal but shall not exceed the amount of income tax or premium tax due." Based on our review, we are unclear as to how these sections specifically conflict with Ark. Code Ann. § 26-51-435. Further, we note that the Wilsons do not

11

Arkansas Code Annotated section 26–51–2205(g)(1) provides that a holder may use the Arkansas historic rehabilitation income tax credit to offset up to 100 percent of the state income taxes due or premium tax due from the holder. The circuit court specifically found that Ark. Code Ann. § 26–51–435 conflicts with Ark. Code Ann. § 26–51–2205(g)(1):

29. The "income taxes due" when the petitioners filed their tax return totaled $8,430. This is based on the language used in the forms (tax returns) drafted by [ADFA] for purposes of calculating state income taxes.

30. [ADFA] instead applied the tax credit to the "Tax Amount," which is the amount of the tax before proration (and, thus, not the amount "due").

ADFA correctly points out that, pursuant to Ark. Code Ann. § 26–51–435(c), the "tax due" is the amount of tax owed after the application of credits but before apportionment. The tax owed after apportionment is "the amount of income tax which must be paid to the State of Arkansas." Ark. Code Ann. § 26–51–435(e). Thus, ADFA correctly applied the credit prior to apportionment, and these two statutory provisions do not conflict.

Additionally, the circuit court found that "the system set up by the respondent impermissibly dilutes the value of the tax credit, rather than allowing the tax credit to be used for up to 100% of the amount due as required by Ark. Code Ann. § 26–51–2205(g)(1)." The plain language of subdivision (g)(1) does not require the credit claimed by the Wilsons to offset 100 percent of their income tax due. Instead, it simply provides that a credit holder "may" use the credit to offset "up to" 100 percent of the income taxes due. Stated differently, unlike section 26–51–435, section 26–51–2205(g)(1) does not address how the

_____

develop these purported conflicts in their brief. Accordingly, we cannot say that these statutes conflict with Ark. Code Ann. § 26–51–435.

12

income tax is computed but merely states that a holder of the credit *may* use the credit to offset up to 100 percent of the holder's income tax liability.

We now turn to whether Ark. Code Ann. § 26-51-435 conflicts with Ark. Code Ann. § 26-51-2205(g)(3). Subdivision (g)(3) provides that "[a]n Arkansas historic rehabilitation income tax credit may be used up to its total amount by any holder *without limitation* and is not subject to limits imposed by federal law or regulation on the use of federal rehabilitation tax credits." (Emphasis added.) As ADFA points out, this statute cannot mean that all restrictions placed on the use of historic rehabilitation income tax credit would conflict with subdivision (g)(3). For example, section 26-51-2205 places limits on the number of years that a tax credit can be carried forward. Instead, the plain language in the phrase "any holder without limitation" means that there is no limit on the type of holder that can use the credit.

In sum, we hold that the circuit court incorrectly determined that the tax credit must be applied after apportionment and erroneously determined that the statutes set forth above conflict with Ark. Code Ann. § 26-51-435. Accordingly, we reverse and remand.

Reversed and remanded.

WOMACK, J., concurs without opinion.

KEMP, C.J., dissents.

**JOHN DAN KEMP, Chief Justice, dissenting.** The Arkansas Historic Rehabilitation Income Tax Credit Act, codified at Arkansas Code Annotated sections 26-51-2201 to -2208 (Repl. 2020 & Supp. 2021), was created "to encourage economic development and community revitalization within existing state and federal infrastructure by providing an income tax credit to promote the rehabilitation of historic structures

throughout Arkansas." Ark. Code Ann. § 26-51-2202. Arkansas Code Annotated section 26-51-2205(g)(1) provides that "[a] holder may use the Arkansas historic rehabilitation income tax credit to offset up to one hundred percent (100%) of the state income taxes due or premium tax due from the holder." In my view, subdivision (g)(1) should allow the $10,000 credit claimed by the Wilsons "to offset up to one hundred percent (100%)" of their 2015 nonresident Arkansas income tax liability of $8,578.96. This practice would achieve the purpose of the Arkansas Historic Rehabilitation Income Tax Credit Act as set forth by the General Assembly. Therefore, I respectfully dissent.

*Keith K. Linder, Bradley B. Young*, and *Susan M. Fowler*, Office of Revenue Legal Counsel, for appellants.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellees.